**NOT FOR PUBLICATION**                                    **[42]**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

UNITED STATES OF AMERICA,          :
                                   :   Case No. 05-CR-573 (FLW)
        Plaintiff,              :
                                   :
           v.                 :   **OPINION**
                                   :
                                   :
MAHMOUD A. ABUARQOUB,              :
                                   :
        Defendant.              :

---

APPEARANCES

For the United States:

R. STEPHEN STIGALL
EUGENIA COWLES
U.S. ATTORNEY'S OFFICE
FEDERAL BUILDING & U.S. COURTHOUSE
401 MARKET STREET, 4TH FLOOR
CAMDEN, NJ 08101

For Defendant:

ROCCO C. CIPPARONE
LAW OFFICE OF ROCCO C. CIPPARONE
203-205 BLACK HORSE PIKE
HADDON HEIGHTS, NJ 08035

**WOLFSON, United States District Judge**:

      Defendant Mahmoud A. Abuarqoub, ("Abuarqoub" or

"Defendant") has filed a motion for judgment of acquittal on

Count 1 of the Indictment pursuant to Fed. R. Crim. P. 29.  He

argues that the trial record is devoid of evidence from which a

reasonable trier of fact could find beyond a reasonable doubt

that he "caused to be delivered by mail" a package containing

unapproved flu vaccines as charged in Count 1 of the Indictment because the Government's proofs at trial showed that flu vaccines were delivered to Defendant via DHL, as opposed to the United States Postal Service.  He argues that "mail" means only that matter delivered by United States Postal Service and therefore, an unconstitutional constructive amendment of the Indictment occurred.  The United States argues that the term "mail," as used in the Indictment, encompassed both materials delivered by the United States Postal Service and commercial interstate carriers, and that there was no constructive amendment.  The Court has considered the parties' papers and held oral argument on January 19, 2006.  For the reasons stated below, Defendant's motion is denied.

## I.   BACKGROUND

On December 4, 2004, defendant Mahmoud A. Abuarqoub was arrested at Philadelphia International Airport pursuant to a federal criminal complaint and arrest warrant issued by the Honorable Ann Marie Donio, U.S.M.J. The complaint charged Abuarqoub with fraudulently and knowingly importing into the United States merchandise contrary to law, namely, flu vaccines which were unapproved by the United States Food and Drug Administration, in violation of 21 U.S.C. § 331(d), 18 U.S.C. §§ 2 and 545.  The complaint advised Abuarqoub that, inter alia, the flu vaccines he was charged with importing had been sent via the interstate commercial carrier, DHL.

2

On February 1, 2005, during the pendency of several continuances requested by Defendant, the United States supplied the defense with pre-Indictment discovery, which included "A DHL waybill showing shipment of flu vaccine from Saudi Arabia to [Defendant]." Letter from R. Stephen Stigall to Rocco Cipparone (Feb. 1, 2005), U.S. Ex. A.; DHL Shipment Air Waybill (July 11, 2004), U.S. Ex. A.  Abuarqoub requested additional continuances, all of which were granted by Judge Donio.  On July 27, 2005, the Grand Jury returned a five-count Indictment, Criminal No. 05-573 (FLW) against Abuarqoub. Count 1 charged the defendant with committing mail fraud.[1]  Specifically, the Grand Jury charged that:

> On or about November 7, 2004, for the purpose of executing the aforesaid scheme and artifice, in the District of New Jersey and elsewhere, the defendant ... did knowingly and wilfully cause to be delivered by mail according to the direction thereon a package containing 810 unapproved APC Vaxigrip flu vaccines addressed to Safad Corporation, 112 Bala Drive, Somers Point, New Jersey, from Hussam Abed Trading Est., Kingdom of Saudi Arabia, P.O. Box 12951, Jeddah 21483.

The charging language described the package delivered "by mail according to the direction thereon," and the evidence before the Grand Jury included the DHL waybill used to mail the package from

---

[1]Counts 2 and 3 charged the defendant with illegally introducing into interstate commerce an unapproved new drug and a misbranded drug while acting with intent to defraud; Count 4 charged the defendant with engaging in the wholesale distribution of a prescription drug without a license to do so; Count 5 charged the defendant with knowingly or fraudulently importing the flu vaccines into the United States.  These counts are not the subject of this motion.

Saudi Arabia to the defendant in the United States. U.S. Jencks Material, Ex. MH-1.

Abuarqoub was arraigned on the Indictment, Criminal No. 05-573 (FLW), on August 9, 2005.  On August 19, 2005, the Government supplied its first wave of discovery which included, among other things, reference to the DHL waybill.[2]  Trial commenced on January 9, 2006, during which the Government presented evidence of, inter alia, a package containing Vaxigrip flu shots that was sent from Saudi Arabia to Defendant via DHL.

On January 19, 2006, at the close of the Government's case-in-chief, Abuarqoub filed the instant motion for judgment of acquittal on Count 1 pursuant to Fed. R. Crim. P. 29.[3]  In his moving papers, Defendant argued that the evidence presented at trial was legally insufficient to sustain a conviction under the mail fraud charge because the United States had proven that the vaccines were sent via DHL rather than by "mail" as charged in Count 1, paragraph 18 of the Indictment.  The written motion also asserted that instructing the jury or allowing it to deliberate on Count 1 based on the delivery of the flu vaccines via interstate commercial carrier would constitute an

_____

[2]Abuarqoub never filed a motion for a bill of particulars pursuant to Fed. R. Crim. P. 7(f).

[3] Abuarqoub also moved for judgment of acquittal on Counts 1, 2, 3, and 5 pursuant to Rule 29 of the Federal Rules of Criminal Procedure, claiming that insufficient evidence existed of the defendant's fraudulent intent – an essential element of those crimes.  The Court orally denied the motion as to Counts 1, 2, 3, and 5.

unconstitutional constructive amendment to the Indictment.  The
parties argued their respective positions before the Court, and
the Court reserved decision on the motion pursuant to Fed. R.
Crim. P. 29(b).

Following argument on the Rule 29 motion, Abuarqoub
rested before the jury, and the Court then instructed the jury on
the law applicable to the case.  The Court instructed the jury
that one element of the mail fraud count was that the United
States had to prove beyond a reasonable doubt "that in execution
of that scheme, the defendant used or caused the use of the mails
or a private or commercial interstate carrier as specified in the
Indictment."  The Court further explained this element, and
informed the jury that:

> The third element of mail fraud that must be
> proven beyond a reasonable doubt is that deliveries by
> the United States mail or commercial carrier were used
> in furtherance of the scheme to defraud.  The use of
> the mails as I have used it here includes materials
> sent through either the United States Postal Service or
> a private or commercial interstate carrier.  Under the
> law, when a defendant does an act with knowledge that
> the use of the mails will follow in the ordinary course
> of events, or where such use of the mails can
> reasonably be foreseen, even though not actually
> intended, then he or she causes the mails to be used.
> Therefore, if you are satisfied beyond a
> reasonable doubt that the defendant engaged in the
> scheme to defraud as charged in the Indictment, and
> that the use of the mails was a reasonably foreseeable
> consequence of this scheme and that the individual
> mailing charged in the Indictment contributed to the
> carrying out of the scheme, then the mailing element of
> the offense is satisfied.
> The Government must prove, however, that the
> use of the mails furthered, advanced, or carried out in
> some way the scheme to defraud.  The mailed matter need
> not disclose on its face some fraudulent

representation, but need only be intended to further or assist in carrying out the scheme to defraud. A routine mailing can satisfy the "mailing" element of the mail fraud offense.

Once participation in a scheme to defraud is established, a knowing participant is liable for any mailing that subsequently takes place in connection with the scheme, whether or not the participant actually knows of or agrees to that specific mailing.

With respect to the use of the mails, the United States must establish beyond a reasonable doubt the particular mailing charged in the Indictment, specifically, the mailing of 810 flu vaccines. The United States does not have to prove that the mailing was made on the exact dates charged in the Indictment. It is sufficient if the evidence establishes beyond a reasonable doubt that the mailing was made on a date substantially similar to the dates alleged in the Indictment.

The United States may, but is not required to, produce at trial the actual document mailed. It may be your own experience that envelopes are commonly discarded. It is proper that the United States prove a mailing by circumstantial evidence, or by proof of business custom. Proof of a routine practice of using the mail to either send or receive a particular letter or parcel or an office custom to the same effect is sufficient to support a determination that a mailing occurred in a particular instance. The United States also may establish the mailing not only through the testimony of the individual who usually received or sent the mail--the United States may establish the business practice through the testimony of anyone with personal knowledge of the particular mailing custom and practice. Moreover, proof of time interval between the sending and receipt of material also is probative of whether the United States mails were used. You may infer from that evidence and the surrounding circumstances that a particular mailing occurred as charged. And, as I later will instruct, it is also sufficient under our laws if the defendant aided and abetted the use of the mails in furtherance of the fraud. U.S. v. Abuargoub, Jury Charge (Jan. 19, 2006).

The next day, January 20, 2006, the parties made their closing arguments. During the Government's Summation, AUSA Stigall argued:

6

The third element and last element of the mail
fraud count is the defendant caused the use of a
commercial interstate carrier to be used in furtherance
of the scheme.  And here you have seen and you will
have in your jury deliberation room Government's
Exhibit [3], the box that the vaccine came in from
Saudi Arabia via DHL, [and] Government Exhibit 4[,] the
DHL waybill.  You could read the document.  I submit
members of the jury Government's Exhibit 4 as well as
Government's Exhibit 3 show that an interstate carrier
was used in this case and [that the box containing the
vaccines] travel[ed]  from Saudi Arabia to the
defendant.
Government's Exhibits 112 R and 115 R you may
recall are the conversations with Dr. Giocomelli in
which the defendant basically acknowledged that he
shipped that box -- remember that's where the DHL  gets
very confused and it doesn't come here right away.  He
acknowledges he causes it to be shipped.  So I submit
members of the jury we have proven this element beyond
a reasonable doubt.  And because the government has
proven all of these elements beyond a reasonable doubt
I ask that you find him guilty of Count 1 of the
indictment.  U.S. v. Abuarqoub, Govt.'s Closing Arg.
Tr. (Jan. 20, 2006) at 17:11-18:8.

After deliberating for approximately three hours, the jury

convicted Abuarqoub of all five counts in the Indictment,

including Count 1, mail fraud.  On January 23, 2006,  the United

States filed written opposition to Defendant's Rule 29 motion as

to Count 1.  On January 28, 2006, Defendant filed reply papers.

## II.  DISCUSSION

A.  Constructive Amendment and Variance Standard

On occasion, a trial may depart from the framework of the

indictment in two principal ways.  First, trial proof sometimes

goes beyond the parameters of the indictment in that it

establishes offenses different from or in addition to those

charged by the grand jury.  Termed a constructive amendment[4] of the indictment, such error occurs when the presentation of trial evidence and/or jury instructions have the effect of broadening essential terms of the charged offense in such a way that the defendant is deprived of his substantial right to be tried only on charges presented in the indictment and create a substantial likelihood that the defendant may be convicted of an offense other than that charged in the original indictment.  United States v. Miller, 471 U.S. 130, 139-40 (1985); U.S. v. Syme, 276 F.3d 131, 148 (3d Cir. 2002); Gaither v. United States, 413 F.2d 1061, 1071-72 (D.C. Cir. 1969).

Constructive amendments are constitutional errors that are of sufficient magnitude that they cannot be dismissed as harmless when a defendant objects to them at the district court level. Syme, 276 F.3d at 154 n. 8. Cases from the Supreme Court and the Third Circuit hold that it is a per se violation of the Grand Jury Clause of the Fifth Amendment when a court instructs a jury on a ground for conviction that is not fully contained in the indictment.[5] See, e.g., id. at 151.  A resulting conviction cannot stand because there is no assurance that it matches the

---

[4]Such amendments are sometimes referred to as fatal variances.

[5]The only benign amendments are those that create no risk of conviction for an uncharged offense, and typically involve the correction of mere technical errors contained in the indictment, of a typographical or clerical nature for example, which would not alter the essential substance of the charged offense.  U.S. v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994).

offense charged. Id.

On the other hand, the proven elements of a sustainable conviction are sometimes narrower than the full scope of the charge in the sense that the charge states all and more than what is necessary to identify the offense and sufficient evidence is not introduced to support each of the excess allegations. U.S. v. Castro, 776 F.2d 1118, 1123 (3d Cir. 1985). Such an occurrence is labeled a variance and is distinct from a constructive amendment because the charging terms have not been broadened at trial. Miller, 471 U.S. at 139-45. While a variance may deprive the defendant of notice of the details of the charge against him and protection against reprosecution, Gaither, 413 F.2d at 1072, variances are subject to a less strict inquiry because the defendant was, in theory, fully informed of what was to become the offense of conviction, Castro, 776 F.2d at 1121-23.

The Court must decide if any constructive amendment or variance occurred.  If the Court finds that Defendant was charged with a different offense in Count 1 of the Indictment than that proven at trial, Defendant's conviction on Count 1 would not stand because a constructive amendment would have taken place. See Syme, 276 F.3d at 151.  If the Court finds that Count 1 was narrowed, but not broadened or changed, the Court must decide whether such variance unfairly surprised or otherwise prejudiced Defendant in the conduct of his defense. See Castro, 776 F.2d at 1122.

9

B.  Count 1, Mail Fraud

Chapter 63 of Title 18 of the United States Code is entitled "Mail Fraud."  Section 1341 of Chapter 63, entitled "Frauds and swindles" provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, <u>places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier</u> according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. 18 U.S.C. § 1341 (emphasis added).

In 1994, § 1341 was amended.  The phrase "or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier," was inserted after " delivered by the Postal Service" Pub.L. 103-322, § 250006(1), and the phrase "or such carrier" was inserted after "causes to be delivered by mail," <u>id.</u> § 250006(2).  Congress characterized the amendments as "Broadening application of mail fraud statute."  <u>Id.</u> § 250006.

10

Defendant argues that the term "mail," as used in the mail fraud count of the Indictment refers to packages delivered by the United States Postal Service ("USPS") only since it did not allege delivery by a private or commercial carrier.  Further, Defendant contends that mail fraud involving a package sent by USPS is a separate and distinct offense from mail fraud involving a package sent by a private commercial carrier.  As such, Defendant argues that because the grand jury in this case charged only the former, an unconstitutional constructive amendment occurred in three ways: "by the government's proofs at trial; through the government's closing argument; and through the Court's instruction to the jury that it could base a determination that the element of mailing was satisfied by delivery through a private or commercial interstate carrier." Def.'s Reply Br. at 14.

The first step the Court must undertake in determining whether any constructive amendment occurred is to look at the indictment and assess that which Defendant argues has been broadened.  Here, the relevant portion of the Indictment charged Defendant with causing "to be delivered by mail" a package containing Vaxigrip flu vaccines in violation of § 1341. Indictment, Count 1, ¶ 18.  Therefore, the Court must ascertain the definition of the term "mail" as it was used in Count 1. Once "mail" is defined, the Court will be able to assess whether that term, as used in the Indictment, was broadened at trial.  If

it was broadened then that would be a <u>per se</u> violation of the
Grand Jury Clause of the Fifth Amendment.

There is no doubt that prior to the 1994 amendments, the
term "mail" as used in § 1341 or in an Indictment charging
someone with a violation thereof, referred to the USPS only.
Here, Defendant was indicted in 2005 in connection with events
occurring in 2004.  Therefore, pre-amendment cases that define
"mail" are of less relevance to this Court's inquiry.  A number
of the cases cited by Defendant are pre-amendment cases, and,
moreover, some of those cases focus on a <u>hand delivery made by a</u>
<u>private messenger or courier</u>, which does not invoke § 1341.
However, the amended § 1341 does not attach liability to such
hand deliveries either; thus, those cases are of limited value.[6]

Defendant also cites to <u>Syme</u>, 276 F. 3d 131, for the
proposition that "mail fraud requires as [an] element use of

---

[6]Defendant cites: <u>U.S. v. Hart</u>, 693 F.2d 286 (3d Cir.
1982)(pre-amendment case holding that a hand delivery is not a
mailing under § 1341); <u>U.S. v. Fox</u>, 69 F.3d 15 (5th Cir.
1995)(stating that the common meaning of "mail" is the USPS;
however the defendant was indicted in 1993, before § 1341 was
amended); <u>Utz. V. Correa</u>, 631 F. Supp. 592 (S.D.N.Y. 1986) (pre-
amendment case holding that a hand delivery was not a mailing
since the USPS was not used); <u>McCoy v. Goldberg</u>, 748 F. Supp. 146
(S.D.N.Y. 1990) (pre-amendment case holding that allegations that
defendant "sent" and "delivered" items lacked the detail
necessary to support a finding by the court that the USPS was
used, as was then required by § 1341); <u>Tabas v. Tabas</u>, 47 F.3d
1280 (3d Cir. 1995)(plaintiffs alleged defendants committed §
1341 mail fraud between 1987 and 1991, which is before the
amendment of § 1341; court found the allegations unreliable
because one defendant testified that the items were delivered by
courier and not the USPS).

United States mail." Def.'s Moving Br. at 3. In Syme, defendant was indicted in 1998 on four counts of mail fraud that allegedly occurred between 1993 and 1997. Syme, 276 F. 3d at 139. The indictment alleged that Syme's "scheme to defraud caused [an entity] to send him checks through the U.S. mail on four separate occasions." Id. at 139-40. The Third Circuit then went on to list as an element of § 1341 mail fraud "the use of the United States mail." Id. at 142 n. 3.

Defendant's limited reading of Syme is unwarranted. Since Syme is a post-amendment case, the Third Circuit could not possibly have meant that § 1341 mail fraud requires as an element the use of the United States mail only and that liability does not attach to cases in which a private commercial interstate carrier is used. Indeed, it is more likely that the court's express reference to the United States mail was meant to track the language of the indictment, which narrowly charged the "U.S. mails."

Moreover, the Syme court's reference to § 1341 as the "mail fraud" statute[7], coupled with its listing of "the use of the United States mail" as an element thereof, do not establish Defendant's position that the phrase "mail fraud" refers to cases involving the USPS only since numerous other courts in cases in which the defendant's scheme allegedly involved a private

_____

[7]The court's reference to wire fraud in Syme is omitted.

13

commercial interstate carrier, have also referred to § 1341 as the "mail fraud" statute.  See, e.g., U.S. v. Silvestri, 409 F.3d 1311, 1334-35  (11th Cir. 2005) ("This Court has said that the crime of mail fraud was completed when the defendant delivered a letter containing false, material representations via Fed Ex.")(emphasis added); U.S. v. Ellington, 348 F.3d 984, 988 (11th Cir. 2003)("Count Two charged the defendants with mail fraud for Hasner's receipt of the check from the Chelsea Commons project, sent via Federal Express, in violation of 18 U.S.C. § 1341.")(emphasis added); U.S. v. Gil, 297 F.3d 93, 100 (2d Cir. 2002) ("[A]pplication of the mail fraud statute to intrastate mailings sent or delivered by private or commercial interstate carriers, is a permissible exercise of Congress's power.")(emphasis added); U.S. v. Chua, 16 Fed.Appx. 737, 738, 2001 WL 881737 (9th Cir. 2001) ("On May 13, 1999, Chua was indicted on eight counts of mail fraud in violation of 18 U.S.C. § 1341....Counts One through Four of the indictment were based on mailings from various recycling processors through two commercial carrier companies, Federal Express and DHL.")(emphasis added); U.S. v. Marek, 238 F.3d 310, 318 (5th Cir. 2001) ("[T]hrough passage of a 1994 amendment to the federal mail fraud statute, Congress expanded 18 U.S.C. § 1341 to reach private interstate commercial carriers, such as Emery, DHL, and Federal Express, in addition to the U.S. Postal Service.")(emphasis added); U.S. v. Yusuf, 2005 WL 1592928, *4 (D.V.I. 2005) ("The foreseeable use of

14

interstate telephone facilities in fax and e-mail and the use of
FEDEX communications in furtherance of the execution of a scheme
to defraud constitutes violation of 18 U.S.C. 1341 (Mail
Fraud).")(emphasis added); Regency Communications, Inc. v.
Cleartel Communications, Inc., 304 F. Supp.2d 1, 10 (D.D.C. 2004)
("A plaintiff alleging a violation of [the] mail ... fraud
statute[] ... must show that the defendant used the United States
mail [or] a private or commercial interstate carrier, e.g. FedEx,
... in furtherance of a scheme to deceive and defraud.")(emphasis
added); U.S. v. Coffee, 113 F. Supp.2d 751, 752 (E.D. Pa. 2000)
("As the Coffees allegedly used ... Federal Express, [the
indictment] allege[s] either mail ... fraud, in violation of 18
U.S.C. § 1341.")(emphasis added); U.S. v. Peterson, 103 F.
Supp.2d 1259, 1261 (D. Colo. 2000) ("On October 22, 1998 an
indictment was returned charging fifteen AEG employees with ...
mail fraud... in violation of 18 U.S.C. § 1341.... Owners
allegedly sent money via United States mail or Federal Express to
AEG, in the form of checks or cash.")(emphasis added); Livingston
Downs Racing Ass'n, Inc. v. Jefferson Downs Corp., 259 F. Supp.2d
471, 478 (M.D. La. 2002)("Section 1341 makes it unlawful (as mail
fraud) to use the Postal Service or any private interstate
carrier 'for the purpose of executing' a 'scheme or artifice to
defraud, or for obtaining property by means of false or
fraudulent pretenses [or] representations.'" (quoting §
1341)(emphasis added)).

That chapter 63 of title 18 of the United States Code is entitled "mail fraud" and was not retitled as part of the § 1341 1994 amendments further persuades this Court that Congress intended the phrase "mail fraud" to be broadened so as to encompass private commercial interstate carriers in addition to the USPS. But, Defendant points out that the Indictment narrowly charged "mail fraud" even though § 1341 is entitled "Frauds & Swindles." Thus, he claims that the Indictment charged a narrow crime involving the USPS, rather than the broadened crime in § 1341. This argument is unavailing, though. As stated above, § 1341 is frequently referred to as the "mail fraud" statute, as opposed to the "Frauds & Swindles" statute, even in cases involving private carriers and not the USPS.

Furthermore, the fact that the phrase "mail fraud" has been read to encompass more than just the USPS in the context of § 1341 is relevant to the Court's inquiry of the definition of "mail," and suggests that the term "mail" also has a broader meaning. Indeed, there is ample case law supporting the notion that the term "mail" signifies more than the USPS and includes private commercial interstate carriers in both the real world and when used in connection with § 1341. See, e.g., U.S. v. Dobson, 419 F.3d 231, 237 (3d Cir. 2005) ("The substantive elements of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud; (2) the use of the mails-whether the United States Postal Service or a private carrier-in furtherance of the

16

fraudulent scheme; and (3) culpable participation by the
defendant, that is, participation by the defendant with specific
intent to defraud.")(emphasis added); U.S. v. Tiller 302 F.3d 98,
101 n. 2 (3d Cir. 2002) (When discussing the "mailing element" of
§ 1341, the Third Circuit stated that it was "us[ing] the term
'mail' and 'mailing' to include any mode of delivery covered by
the mail fraud statute.")(emphasis added); U.S. v. Hitchens, 62
Fed. Appx. 417, 418-19, 2002 WL 31898234 (3d Cir. 2002) (Mail
fraud requires a "finding that defendant knowingly caused the use
of the mails....We agree with the District Court that the
government introduced multiple sources of evidence primarily in
the form of direct testimony that established ... the routine
practice on the part of mortgage companies of mailing-usually by
Federal Express-the various documents used to support an
application for a mortgage loan....This direct testimony, in
conjunction with the fact that Hitchens was a licensed real
estate broker, formed a sufficient basis from which the jury
could reasonably conclude that the use of the mails ... was
reasonably foreseeable by Hitchens.") (emphasis added).[8]

---

[8]See also U.S. v. Sharpe, 438 F.3d 1257, 1264 (11th Cir.
2006) ("The indictment also alleged that the defendants used the
mails (a commercial mail carrier, Federal Express) to send the
fraudulent disbursement check to the Receiver." (emphasis in
original)); U.S. v. Munoz, 430 F.3d 1357, 1368 (11th Cir.
2005)("Counts 3 through 8 charge Appellants with participating in
a scheme to defraud customers of U.S. One, in violation of the
federal mail fraud statute, 18 U.S.C. § 1341. Each count
specifies a single victim who purchased Power Gel or Vigor from
U.S. One and received the product by either U.S. Postal Service
or Federal Express. It is undisputed that these six named

customers did in fact order the drugs and <u>receive them by mail</u>.")(emphasis added); <u>U.S. v. Rybicki</u>, 354 F.3d 124, 133 (2d Cir. 2003) ("<u>Section[] 1341 was subsequently amended to apply to frauds carried out through private mail carriers</u>.")(emphasis added); <u>U.S. v. Yeager</u>, 331 F.3d 1216, 1221 (11th Cir. 2003) ("Under 18 U.S.C. § 1341, a person who, having devised a scheme to defraud, <u>mails any matter through the Postal Service or any commercial interstate carrier</u> for the purpose of furthering or accomplishing that scheme, commits a federal offense punishable by fine and up to five years of imprisonment. The federal mail fraud statute prohibits <u>the use of the mail</u> to further 'scheme[s] ... to defraud.'")(emphasis added); <u>U.S. v. Hasner</u>, 340 F.3d 1261, 1272 (11th Cir. 2003) ("The government also established the <u>requisite 'mailing'</u> to support Defendants' convictions. Although <u>'mailing' is a required element of mail fraud</u>, the <u>use of the mails</u> need not be an essential element of the scheme. Here, the fraud in this case did not achieve fruition until Fisher received the checks from the ill-obtained contract [through Federal Express] . Thus, the government established the required <u>mailing element</u>."(internal citation omitted)(emphasis added)); <u>U.S. v. Gil</u>, 297 F.3d 93, 100 (2d Cir. 2002) ("We conclude that <u>private and commercial interstate carriers, which carry mailings between and among states and countries</u>, are instrumentalities of interstate commerce, notwithstanding the fact that they also deliver mailings intrastate.")(emphasis added);<u>U.S. v. Cothran</u>, 302 F.3d 279, 288-89 (5th Cir. 2002)("To convict under [§ 1341], the government must prove (1) that the defendant <u>used the mail</u> (2) to execute a scheme to defraud (3) with the specific intent to defraud....The bill of information describes the actions that Cothran took to defraud Quantex in June 1998. On June 16, 1998, he used the names Charles Johnson and Ram Technology to order twenty computers from Quantex, which agreed to <u>ship the computers by Federal Express</u>, with payment to be tendered by cashier's check.")(emphasis added); <u>U.S. v. Chua</u>, 16 Fed. Appx. 737, 739, 2001 WL 881737 (9th Cir. 2001)("Mail fraud under 18 U.S.C. § 1341 involves: (1) existence of a scheme to defraud; and (2) using or causing the <u>use of the mails</u> in furtherance of the scheme.")(emphasis added); <u>U.S. v. Photogrammetric Data Services, Inc.</u>,259 F.3d 229, 248 (4th Cir. 2001) ("We believe that the unambiguous language of current <u>§ 1341 criminalizes all mailings</u> in furtherance of a fraudulent scheme if the mailings are placed with <u>either the United States Postal Service or with other private or commercial mail delivery services</u> which operate interstate, regardless of whether any particular <u>mailing</u> actually crosses state lines.")(emphasis added); <u>U.S. v. Chua</u>, 16 Fed.Appx. 737, 738, 2001 WL 881737 (9th Cir. 2001) ("On May 13, 1999, Chua was indicted on eight counts of mail fraud in violation of 18 U.S.C. § 1341....Counts One through Four of the

Defendant also relies heavily upon the fact that Congress termed the 1994 amendment of § 1341 as a "broadening," as opposed to a "clarification."  Yet, I find that the broadening of the "mail fraud statute" to expressly include private commercial interstate carriers suggests that Congress also recognized that "mail" should encompass more than just the USPS; Congress recognized the realities of today's expanded system of mailing materials and that these alternatives to the USPS are widely used.

However, Defendant correctly points out that <u>Dobson</u>, <u>Tiller</u>, and other cases do not engage in statutory analysis as to

_____

indictment were based on <u>mailings from various recycling processors through two commercial carrier companies, Federal Express and DHL</u>.")(emphasis added); <u>U.S. v. Coleman</u>, 196 F.3d 83, 84 (2d Cir. 1999) ("Coleman was convicted ... of violating ... 18 U.S.C. § 1341 (<u>use of a private interstate mail carrier</u> with intent to defraud).")(emphasis added); <u>U.S. v. Moore</u>, 1997 WL 716424, *2 (4th Cir. 1997) ("To prove mail fraud, 18 U.S.C. § 1341 , the government had to show, beyond a reasonable doubt, that Moore (1) engaged in a scheme to defraud, (2) <u>by using the mails</u>, (3) in furtherance of the scheme.")(emphasis added); <u>Florida Software Systems, Inc. v. Columbia/HCA Healthcare Corp.</u>, 46 F.Supp.2d 1276, 1281 (M.D. Fla.1999) ("This argument is baseless as [§ 1341], as amended in 1994, now includes <u>mail delivered 'by the Postal Service, or ... any private or commercial interstate carrier.'</u>")(emphasis added); <u>Brown v. Coleman Investments, Inc.</u>, 993 F. Supp. 416, 426 (M.D. La. 1998) ("In order to state a claim for mail fraud under 18 U.S.C. § 1341, the following elements must be pled: (1) the defendant knowingly created a scheme to defraud; (2) the defendant acted with a specific intent to commit fraud; and (3) the defendant mailed something or caused another person to <u>mail something, through the use of the United States Postal Service or any private or commercial interstate carrier</u>, for the purpose of carrying out the scheme.")(emphasis added).

Congressional intent[9] regarding the definition of the term "mail" as used in § 1341 after the 1994 amendments; the cases to which Defendants cite do not undertake such analysis, either. Therefore, this is an issue of first impression for this Court to decide.

In that regard, Defendant argues that Congress's insertion of the phrase "or such carrier" after the phrase "causes to be delivered by mail" in § 1341 indicates that Congress intended for "mail" to mean the USPS and nothing else, because if it intended for "mail" to encompass both the USPS and commercial interstate carriers, the phrase "or such carrier" becomes "totally superfluous." Def.'s Reply Br. at 4-5. The Supreme Court has recently made clear that "[t]he definition of words in isolation ... is not necessarily controlling in statutory construction. A word in a statute may or may not extend to the outer limits of

_____

[9]The best evidence of legislative intent is obviously the language of the statute itself. Where the language of the statute is clear and unambiguous, the plain meaning of the statute controls. See United States v. One "Piper" Aztec De Luxe Model 250 PA 23 Aircraft, 321 F.3d 355, 358 (3d Cir. 2003) (citations omitted). To determine statutory meaning, the Court must follow the "cardinal rule that a statute is to be read as a whole, ... since the meaning of statutory language, plain or not, depends on context." King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (citing Massachusetts v. Morash, 490 U.S. 107, 115 (1989) and Shell Oil Co. v. Iowa Dep't of Revenue, 488 U.S. 19, 26 (1988)). While courts should construe statutory language to avoid interpretations that would render any phrase superfluous. U.S. v. Cooper, 396 F.3d 308, 312 (3d Cir. 2005), "[s]tatutory interpretation ... is a holistic endeavor," and as such, a "provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme." Id. at 313 (citing United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., 484 U.S. 365, 371 (1988)).

its definitional possibilities.  Interpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Dolan v. U.S. Postal Service, 126 S. Ct. 1252, 1257 (2006).  Here, Congress's intent was to extend the reach of the "mail fraud statute" so that it would include the use of interstate commercial carriers.  See Pub.L. 103-322, § 250006.  Thus, to construe the word "or" in § 1341 as an expression of Congress's intent to limit the definition of "mail" to the USPS only, would be reading too much into the fact that Congress, in amending the statute, simply certain added words or phrases rather than rewriting the statute in its entirety, and it would ignore Congress's undisputed intent to widen the scope of § 1341 mail fraud to include interstate commercial carriers.

Thus, I find that the phrase "delivered by mail" as used in Count 1 of the Indictment encompassed both the USPS and private commercial interstate carriers, such as DHL.  Therefore, the government's proofs at trial and closing argument, and the Court's instruction to the jury, all of which employed the modern and more expansive definition of "mail," did not unconstitutionally broaden the term as it was used in the Indictment.

Furthermore, there was no complex set of facts proven at trial which differed from the facts charged in the Indictment;

21

the scheme proven was included within the scheme alleged and was simply a narrower version thereof.  See U.S. v. Kuna, 760 F.2d 813, 819 (7th Cir. 1985).  The only proof of mailing presented to the grand jury was a DHL shipment, and the grand jury used the term "mail" in the Indictment; thus, it must be presumed that the grand jury intended for "mail" to encompass the private interstate carrier, DHL.  As such, there was no constructive amendment here.

Defendant's motion is also deficient because in order for an unconstitutional constructive amendment or broadening of the Indictment to have occurred, there would have to be a substantial likelihood that he was convicted of an offense other than that charged in the original indictment.  Defendant contends that interstate carrier-mail fraud is an offense distinct from USPS-mail fraud because private carrier mail fraud requires different elements, namely "delivery by (1) a private commercial carrier; and (2) that such carrier does business interstate (that is, a sufficient Commerce Clause nexus)," Def.'s Reply Br. at 6-7, and argues that the Government failed to prove the "interstate" element.  However, he cites no case in support of his contention that interstate carrier-mail fraud is a crime distinct from USPS-mail fraud, and the Court has found no such case.  The Court finds that § 1341 has a single mailing element and that this element can be satisfied by the government with proof that the USPS or an interstate carrier was used.  See, e.g., Dobson, 419

F.3d at 237 (3d Cir. 2005) ("The substantive elements of mail fraud under 18 U.S.C. § 1341 are: (1) the existence of a scheme to defraud; (2) the use of the mails-whether the United States Postal Service or a private carrier-in furtherance of the fraudulent scheme; and (3)... participation by the defendant with specific intent to defraud."); Tiller, 302 F.3d at 101 (3d Cir. 2002) (referring to "the mailing  element" of § 1341).

Defendant's argument that the government failed to prove that an interstate carrier was used is also unavailing.  In U.S. v. Chua, 16 Fed. Appx. at 739, Chua argued on appeal that there was insufficient evidence to prove that the mailings in the first four counts of the indictment were transmitted through a "private or commercial interstate carrier" as required by the mail fraud statute.  Chua, 16 Fed. Appx. at 739.  At Chua's trial, a witness "explained how the Fund [at issue] receives ... paperwork through the mail or by commercial carriers such as Federal Express, UPS, Airborne Express, and DHL.  Id. When asked if DHL was an interstate carrier like Federal Express, the witness replied 'I assume so.'" Id.  The Government also "introduced the actual Federal Express and DHL airbills underlying Counts One through Four.  The top of the Federal Express airbill was labeled 'USA Airbill.' The DHL airbill included 'Worldwide Express' and 'Shipment Airwaybill' captions, with options for 'U.S. Domestic,' "International,' and 'Worldmail' service."  Id.

The Ninth Circuit ruled that the evidence presented at the

trial,

> is sufficient for a rational jury to find that Federal
> Express and DHL are interstate carriers. The captions
> and labels on the airbills referencing national and
> worldwide service are strong indicators of these
> carriers' interstate capacity. Witness testimony also
> provided circumstantial evidence that the couriers
> deliver packages on an interstate basis. Even though
> the mailings at issue were delivered within California,
> the evidence introduced by the Government at trial
> certainly allowed for the jury to conclude that Federal
> Express and DHL are interstate carriers.  <u>Id.</u>

Here, the Government introduced into evidence the DHL
waybill associated with the package of flu shots.  The waybill
says "Shipment Air Waybill" and reveals that the package was
shipped from Saudi Arabia and directed to Defendant's home in New
Jersey.  Special Agent Marc Hess also testified that this package
was received at the customs border in New York.  Furthermore, the
box that contained the flu shots was also introduced into
evidence and it has various stamps on it that show that it was
shipped from Saudi Arabia to the United States.  As such, the
Court finds that the evidence introduced by the Government at
trial certainly allowed the jury to conclude that DHL is an
interstate carrier.

Additionally, the cases Defendant cites in which the court
found a constructive amendment are not helpful to his position.
For example, in <u>Stirone v. United States</u>, 361 U.S. 212 (1960),
the grand jury charged defendant with unlawfully interfering with
interstate commerce in violation of the Hobbs Act.   The

indictment specifically charged defendant with interfering, by way of extortion, with the interstate transport of sand into Pennsylvania from other states.  At trial, however, the government was permitted to introduce evidence of additional interference with interstate commerce, in the form of steel shipments from the plant which was to be constructed, in part, from concrete made from the sand at issue. Id. at 214. Stirone was convicted.  At issue before the Supreme Court was whether the indictment had charged defendant with the offense with which he was convicted. Id. at 213.  The Supreme Court ruled that since the indictment could not fairly be read to charge interference with the movement of steel from Pennsylvania to other states, the introduction of that evidence raised the chance that the jury had convicted defendant of a crime with which he had not been charged.  Id. at 218-19.  Here, unlike in Stirone, the crime charged in Count 1 of the Indictment and that proved at trial are the same crime: that for the purpose of executing Abuarqoub's single scheme to defraud Shore Memorial Hospital, he knowingly caused materials, i.e., Vaxigrip flu vaccines, to be mailed.

Defendant also cites United States v. Adams, 778 F.2d 1117 (5th Cir. 1985), which involved a prosecution under 18 U.S.C. § 922(a)(6), proscribing the knowing furnishing, in connection with the purchase of a firearm from a dealer, of "false, fictitious, or misrepresented identification."  In Adams, the indictment alleged that:

> [Adams] in connection with his acquisition of a firearm
> ... from ... a licensed dealer, did knowingly furnish
> ... a false, fictitious and misrepresented
> identification, that is, a Mississippi Driver's License
> Number 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, to the firearms dealer, which
> identification was likely to deceive the firearms
> dealer with respect to a fact material to the
> lawfulness of the acquisition of the firearm by
> [defendant] ... in that [defendant] represented that he
> was Ernest Cole, whereas, in truth and in fact, as he
> then well knew, he was Ernest Adams. 778 F.2d at 1118-
> 19.

The driver's license identified in the indictment, which was
placed in evidence, was in the name of Ernest Cole and showed an
address in Meridian, Mississippi, although the government offered
proof at trial that Adams's residence was actually in Detroit,
Michigan.  Id. at 1119-22.  The trial court also instructed the
jury that it could look to the identity and address on the
license to find deceit and/or fraud.  Id. at 1121-22.  The Fifth
Circuit held it error to allow conviction to stand because the
deceit the grand jury charged was defendant's furnishing of a
driver's license with the false name of "Cole"; the grand jury
did not charge defendant with furnishing a driver's license with
a false address.  Id. at 1125.  Therefore, the resulting
conviction could not stand because "by allowing proof of
residence and by charging the jury so as to permit a conviction
based on misrepresentation and false statements as to residence,
the trial court constructively amended the indictment, thereby
denying Adams his fifth amendment right to be tried only on those
charges presented to and accepted by a grand jury."  Id. at 1119.

This case is distinguishable from Adams, as a result of 1) my finding that "mail" was used in the indictment here in the modern sense that encompasses the USPS and private carriers, and was not used to refer to the USPS only, and 2) the fact that this case, from the time it was in front of the grand jury until the end of the trial, always involved the same scheme with the same mailing: the package containing Vaxigrip flu shots was shipped internationally by DHL.

On the other hand, the Court finds U.S. v. Smith, 474 F.2d 844, 845 (3d Cir. 1973), a case cited by the government, to have more bearing on this inquiry.  In Smith, the first count of the indictment read:

> That ... WILBERT WILL SMITH, being, in pursuance of the Military Selective Service Act of 1967, a registrant with Local Board No. 16 at Pittsburgh, Pennsylvania, unlawfully, wilfully and knowingly did fail and neglect to perform a duty required of him by the said Act and the rules, regulations and directions issued pursuant thereto, in that the defendant, while being processed at the Armed Forces Examining and Induction Station in Pittsburgh, Pennsylvania for induction into the Armed Forces of the United States, did fail, neglect, and refuse to undergo a neuro-psychiatric examination under the direction and orders of representatives of the Armed Forces of the United States. In violation of Title 50, Appendix, United States Code, Section 462(a).
> Smith, 474 F.2d at 845.

Smith's argument on appeal was "that the indictment charged him with failing to follow an order from 'the Armed Forces of the United States,' but that he was convicted for violation of an order from his local board."  Id.  He also argued "that he was

not under Armed Forces jurisdiction at his physical examination
and thus not under a legal duty to follow Armed Forces
personnel's orders" and that it "was therefore necessary for the
Government to show that he violated a local board order,
appellant claims, to establish his guilt." Id.

According to the Third Circuit:

> In stating that Smith failed to perform such a duty by
> not reporting to the examination, the indictment
> alleged the essential element of the crime. The
> indictment need not detail the exact statutory and
> regulatory provisions necessary to create the duty, as
> long as the included details are sufficient to give
> fair notice of what is alleged.  Although the
> indictment speaks of Smith's failure "to undergo a
> neuro-psychiatric examination under the direction and
> orders of representatives of the Armed Forces of the
> United States," this phrase does not necessarily
> indicate that the duty Smith failed to obey was one
> created by Armed Forces orders, as appellant argues.
>
>      In the context of the complete indictment, this
> phrase merely indicates that the examination Smith was
> ordered to attend would be conducted by the Armed
> Forces representatives. Even if the phrase is construed
> to imply that the order to report came from Armed
> Forces representatives, this language merely makes more
> exact the details of the offense. It was at the request
> of Armed Forces representatives that Smith's local
> board ordered him to the March 16 examination. The
> language was therefore surplusage, not necessary to the
> indictment.  The evidence in the present case was
> therefore within the limits charged in the indictment.
> This was not a case where the indictment specified one
> type of offense (interference with interstate
> importation of sand) and the evidence was of a separate
> and different offense (interference with interstate
> importation of steel), as in Stirone v. United States,
> 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).
> Rather, it is a case such as United States v.
> Silverman, 430 F.2d 106 (2d Cir. 1970), where a
> variance, not an amendment, was found when the
> indictment for embezzlement of union funds failed to
> allege that the "labor organization" was involved in
> interstate commerce, as is required by the statute

under which the defendant was convicted. The court read
the term "labor organization" in the indictment to
allege and require proof of the essential element of
interstate commerce. In the present case, the statutory
term "perform a duty required of him by the said Act"
should be read similarly. <u>Id.</u> at 846-47.

Here, as in <u>Smith</u>, Count 1 of the Indictment alleged the
relevant essential element of the crime which, in this case, is
the mailing element of mail fraud.  Moreover, as in <u>Smith</u>, the
offense charged in the indictment was the same offense proven at
trial.  While the Indictment here would have been more precise
had it used the phrase "private commercial carrier" instead of
"mail," at most that reflects a variance.  But since "mail" as
used in the Indictment covered both the USPS and private
commercial interstate carriers, the evidence presented at trial
narrowed the scope of the Indictment by limiting the Government's
case to just an interstate carrier theory and not the USPS.  And,
assuming that this was a variance, Defendant still would not
merit a judgment of acquittal, since Defendant cannot establish
the lack of notice or prejudice prong of the constitutional
inquiry.  <u>See</u> <u>Miller</u>, 471 U.S. at 139-45; <u>Castro</u>, 776 F.2d at
1122; <u>Gaither</u>, 413 F.2d at 1072.  At oral argument, Defendant
essentially conceded that there were no "notice issues" and that
he was not confused or prejudiced as a result of the Indictment's
use of the term "mail" and the subsequent trial evidence of a DHL
shipment.  <u>U.S. v. Abuarqoub</u>, Rule 29 Mot. Tr. (Jan. 19, 2006)
at 25:2-15.  Indeed, Defendant would be hard-pressed to make such

an argument because it is clear that he was aware that the Government's case against him involved his use of DHL and not the USPS.  Since Defendant suffered no prejudice, and the Indictment was sufficient to give Defendant fair notice of the charge, any variance that occurred was of the harmless variety and is insufficient to support a grant of the instant motion.  See Castro, 776 F.2d at 1122.

Therefore, the evidence presented by the Government is sufficient to sustain Defendant's conviction on Count 1 of the Indictment, and his motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 is denied.

## III.  CONCLUSION

For the reasons stated above, Defendant's Rule 29 motion is hereby denied.  The Court will issue an appropriate order.


                                    S/ Freda L. Wolfson
_____      
                                    Honorable Freda L. Wolfson
                                    United States District Judge


Date: May 5, 2006

30